T.C. Memo. 1995-460


UNITED STATES TAX COURT


KENT MAERKI AND KATHLEEN TURNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15393-93.              Filed September 27, 1995.


<u>Kevin J. Mirch</u>, for petitioners.

<u>David W. Sorensen</u>, for respondent.


MEMORANDUM OPINION


RUWE, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' 1990 Federal income tax in the amount of $11,280 and
an addition to tax in the amount of $564, pursuant to section
6651(a)(1).[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
                                        (continued...)

The issues for decision are: (1) Whether petitioners underreported gross income in the amount of $4,398; (2) whether petitioners are entitled to deduct $38,271 for expenses, which they claimed on Schedule C, for a business known as the Registry;[2] (3) whether petitioners are entitled to deduct $8,951 for expenses, which they claimed on Schedule C, for a business known as Express Network Technologies (ENT); and (4) whether petitioners are liable for the addition to tax pursuant to section 6651(a)(1).[3]

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Scottsdale, Arizona. During the year in issue, petitioners were married, and they filed a joint return for that year.

For convenience, we will combine our findings of fact and opinion with respect to each of the issues presented. Respondent's determination is presumed correct, and petitioners

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent's notice of deficiency disallowed $43,820. Respondent concedes that $5,549 in claimed education expenses was erroneously disallowed twice.

[3]Respondent also determined that petitioners had overstated their income by the amount of $16,830 on their Schedule C for a business known as Fiduciary Administrative Services Trust (FAST). Petitioners do not contest this adjustment.

bear the burden of proving otherwise.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933).

## Issue 1.  Underreported Gross Income

Respondent determined that petitioners failed to report income from the following sources:

| | |
|---|---:|
| Arizona State lottery winnings | $1,409 |
| Interest from Valley Bank of Nevada | 1,119 |
| Dividend from the Franklin Fund | 1,651 |
| Dividend from Dreyfus Worldwide MM Fund | 190 |
| Dividend from American Capital Growth | 19 |
| Dividend from Value Line Fund | 10 |
| Increase to income | 4,398 |

Petitioners do not seriously dispute the fact that they received and failed to report these amounts.  However, in an attempt to offset this unreported income, petitioners contend that they erroneously reported a $5,200 loan as income on their Schedule C for the Registry.  The Registry was a business operated by Mr. Maerki (hereinafter referred to as petitioner) whose purpose was to raise capital and do consulting work for other businesses.

Petitioner was the only witness who testified at trial.  He testified that $5,200 had been borrowed and produced a printout of his computerized records showing a $5,200 deposit to the Registry account with the description "Equipment Loan Other Income".  Petitioners produced no other corroborating evidence of the transaction such as loan documents.  In answer to his

attorney's questions concerning whether he overreported income by this amount, petitioner stated: "If this was put on the tax return, which I understand it was, we overstated it, yes." Based on the record before us, petitioners have not met their burden of proof to show that they erroneously reported $5,200 in loan proceeds as gross receipts.

Issue 2. Schedule C Expenses for the Registry

On the Schedule C for the Registry, petitioners deducted expenses of over $126,000. Respondent has disallowed $38,271 of those Schedule C deductions.

Respondent disallowed $8,521, which was deducted as employee benefits on petitioners' Schedule C for the Registry. Petitioner agreed at trial that he had no substantiation for $2,168 of this amount.[4] Of the remaining amount, petitioners claim they are entitled to deduct $4,256 for medical expenses, $1,497 for child care, and $600 for travel reimbursement.

Medical expenses paid as part of an employee benefit plan can be deducted as a business expense. Sec. 1.162-10(a), Income Tax Regs. Of the medical expenses claimed as a business

---

[4]On brief, petitioners argue that they actually understated employee benefits expenses because they failed to take depreciation on a vehicle they purchased for $28,000. This depreciation was allegedly not claimed on their return and, therefore, was not part of the disallowed deduction. Petitioners' evidence falls far short of showing that the vehicle was used in their business so as to entitle them to a depreciation deduction that was not claimed previously.

deduction by petitioners, all but $22 was spent for medical services for petitioners. Petitioners have not proven that an employee plan existed for the Registry. Except for petitioner's conclusory testimony that a plan existed, there is no evidence of such a plan or its terms of coverage. Medical expenses are normally considered to be personal,[5] and an employer's payment of medical expenses for employees would normally constitute taxable income. Section 105 provides for the exclusion of employer-paid medical expenses if certain conditions are met. However, even if some type of plan did exist, petitioners have not established (or even argued) that it would meet the conditions of section 105. We sustain respondent's disallowance of the claimed medical expenses.

Petitioner testified that the $1,497 of child care expenses deducted as employee benefits was paid for the care of petitioners' child. Petitioners provided checks for child care totaling only $818. Such expenses would normally be considered personal, and an employer's payment of its employees' child care expenses would normally be includable in the employees' taxable income. Section 129 provides an exception for qualified dependent care programs. Petitioners have neither proven nor argued that their situation meets the requirements of section

---

[5]Petitioners elected the standard deduction on their return and, therefore, make no claim for an itemized deduction under sec. 213.

129. We sustain respondent's disallowance of the deduction for child care expenses.

Petitioner testified that $600 of the amount claimed as employee benefits was a reimbursement to petitioner Kathleen Turner for travel expenses she incurred as a member of the board of directors for Crystal Communications, a client of the Registry. Petitioners produced a $600 check payable to Ms. Turner. There was no explanation on the check, and petitioners produced no other documentation showing the nature of the alleged travel. Petitioners did not explain why this was classified as an employee benefit rather than a travel expense, nor have they shown that the $600 expense was not included in the $1,558 of travel expenses allowed as a deduction on the Schedule C for the Registry. Petitioners have failed to prove entitlement to the $600 deduction.

On Schedule C for the Registry, petitioners claimed a deduction for "other expenses" in the amount of $29,750, which respondent also disallowed. These "other expenses" included expenses for bank charges of $1,881, seminars/education of $5,549, dues of $1,187, business gifts of $53, casual labor of $350, and "other" in the amount of $20,730.

With respect to the portion of bank charges related to credit cards, petitioner testified that he used credit cards in his name for both business and personal affairs. With respect to bank charges related to an escrow account, petitioner testified

that they related to an escrow account that was opened for a client. Petitioners produced no records showing which portion of the bank charges for credit cards related to business or personal matters, nor did they produce any records to show the nature of the escrow account and related charges. Petitioners have not shown that they are entitled to a business deduction for these bank charges.

The education expenses deducted were paid to Lamson College, apparently for petitioner Kathleen Turner. Petitioner testified that he required his wife to take courses that would help her perform services for the business. Except for petitioner's testimony at trial, no evidence was produced to show that the expenditures incurred for education were ordinary and necessary business expenses of the Registry. Petitioners failed to produce any documents to show which specific courses were taken or the nature of the courses, and petitioner Kathleen Turner did not testify. Petitioners have failed to carry their burden of showing that respondent's determination is incorrect.

With respect to the disallowance of the deduction for "dues", petitioners provided copies of checks that appear to be for various magazines, periodicals, and other publications. Petitioner testified that some of these checks were for magazines needed for business purposes. Petitioner testified that a portion of the amount deducted for "dues" also included advertisements in at least four magazines and/or periodicals.

Petitioners have not shown that these alleged advertising expenses were not included in amounts already allowed for advertising.  The Schedule C for the Registry shows a separate deduction for advertising in the amount of $617.   Petitioner also testified that a portion of the expenses for "dues" consisted of payments to United Cable for cable television. Petitioner testified that approximately one-third of petitioners' house was used for business and that the cable television service was provided for the whole house.  Based on this, we are unable to determine what portion, if any, of the cable television costs might be applicable to the business of the Registry.  Petitioner also testified that a portion of the expenses for "dues" consisted of payments for supplies, even though on the Schedule C for the Registry, petitioners deducted $2,063 for supplies. Again, petitioners have not shown that these amounts were not included in the deduction allowed for supplies on Schedule C. Petitioners have failed to establish their entitlement to the claimed "dues" deduction.

With respect to the deductions for gifts, petitioners produced a check for $53, which indicates on its face that it was for Godiva chocolates.  This was recorded on the business records as a gift, and petitioner testified that it was for a gift to one of the Registry's customers.  We hold that petitioners have established that the $53 was a deductible business expense.

With respect to $350 claimed as a labor expense, petitioners

produced seven canceled checks to Lorraine S. Whipps, each in the amount of $50. The dates of these checks indicated that they were issued approximately every 2 weeks from September 14 to December 14, 1990. The records of the Registry record these checks as "Contract Wages", and petitioner testified that they were paid for miscellaneous labor for the business. We hold that petitioners have established that these items were deductible expenses.

With respect to the "other" expenses claimed in the amount of $20,730, petitioners now apparently claim that $16,755 of this amount actually represents trust preparation fees, which should have been claimed on the Schedule C for ENT rather than the Schedule C for the Registry. Petitioner testified that he operated ENT and that ENT did "business consulting, living trust, and also was involved in starting a couple of other businesses; a legal preparation services business and some others." The checks making up the $16,755 were all drawn on ENT's account. Petitioner gave no explanation of how checks drawn on ENT's account were deducted as expenses of the Registry, nor is it clear whether or not these amounts were already deducted on ENT's Schedule C. There was no other documentation (such as invoices or contracts) presented showing the nature and purpose of these payments. Petitioners again simply failed to prove entitlement to the deductions claimed.

Petitioners appear to argue that the remainder of the

"other" expenses was interest of $3,255.29 paid on a home equity loan. Petitioner testified that the loan proceeds from this loan were used in his business, but he provided no supporting documents to establish this. We also find it curious that a deduction for $3,255.29 of alleged business interest would be buried in a $20,110.29 business deduction classified as "other" when the Schedule C provides a specific line for interest deductions. In any event, based on the record before us, petitioners have failed to prove entitlement to a business deduction for interest.[6]

Issue 3. Education Expenses on Schedule C for ENT

On the Schedule C for ENT, petitioners deducted expenses of over $135,000. Respondent has disallowed $8,951 of those Schedule C deductions.

Petitioners claimed a deduction for education expenses on the Schedule C for ENT in the amount of $8,951. Petitioner testified that $5,000 of this amount was attributable to the cost of a training seminar for Jon Palmieri, an ENT employee. Petitioners produced a canceled check to "The Estate Plan" that indicates it was for training for Mr. Palmieri. The "Profit and Loss" statement for ENT for the year ended December 31, 1990,

---

[6]Petitioners presumably could have elected to deduct this interest as an itemized deduction. Instead, they elected to use the standard deduction.

shows total expenses for education in the amount of $5,000.  In her brief, respondent notes the fact that this statement shows only $5,000--rather than the $8,951--that petitioners claimed on the Schedule C for ENT.  Respondent argues that this shows that the other items of education expenses should be disallowed, but respondent makes no argument on brief that specifically addresses the $5,000 amount.  Based on the record before us, we hold that petitioners are entitled to a $5,000 education expense deduction with respect to ENT.

Petitioner testified that the claimed education expenses also include expenses for other items, such as the rental of rooms from the Arizona Club and the rental of booths for home shows.  Petitioner admitted that he had a personal account with the Arizona Club and that he visited that establishment for nonbusiness purposes.  In addition, the Schedule C for ENT already claimed a deduction for the rental of other business property in the amount of $3,569.63.  Petitioners have not shown that the amount of rental expenses claimed as education expenses is not included in the deduction allowed for rents on the Schedule C.  As previously noted, petitioners' own disbursement journal shows that only $5,000 was spent for education.  Except for the $5,000, petitioners have failed to overcome the presumption that respondent's determination is correct.

Issue 4.  Addition to Tax Pursuant to Section 6651

Respondent determined that petitioners' return was filed 1 day late.  Section 6651 imposes an addition to tax for failure to file a timely tax return, unless such failure was due to reasonable cause and not due to willful neglect.  Petitioners neither argued nor offered any evidence to show that the addition to tax pursuant to section 6651 should not be imposed. Therefore, we sustain respondent's determination that the addition to tax is applicable.

Decision will be entered under Rule 155.